JOHN R. KROGER
Attorney General
JOSEPH G. GROSHONG #04010
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: joseph.g.groshong@doj.state.or.us

Attorneys for Defendants Southern Oregon University; Mary Cullinan; Casey Clithero; Janay Haas; and Lore Rutz-Burri

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PETER T. HARRELL,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN OREGON UNIVERSITY; MARY CULLINAN; CASEY CLITHERO; JANAY HAAS; LORE RUTZ-BURRI; JOHN DOES 1-20, et al.,<br><br>Defendants. | Case No. 1:08-cv-3037-CL<br><br>DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION |

## I. Introduction

Plaintiff seeks injunctive relief based on the alleged overbreadth of the provisions of the Oregon Administrative Rule 573-075-0040(2)(o)(B) ("Rule"). Plaintiff alleges that the Rule is overbroad in that it prohibits speech protected by the First Amendment and that SOU unconstitutionally applied the Rule to Plaintiff based on Plaintiff's postings in an online class. In his motion for preliminary injunction, Plaintiff asks the Court to prohibit SOU from applying the

Page 1 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Rule to him in the future. On its face the Rule is not overly broad. Accordingly, Plaintiff cannot make the required showing in support of his motion for preliminary injunction. Plaintiff's request for preliminary injunctive relief should be denied.

## II. Discussion

OAR 573-075-0040(1)(a) prohibits, among other things, the "obstruction or disruption of teaching...or other institutional activities" at SOU. OAR 573-075-0040(2)(o)(B) provides an example of the type of prohibited disruption. The Rule states in relevant part that Defendant Southern Oregon University prohibits behavior that causes "[d]isruption, obstruction or interference with educational activities in classrooms...or any other place where education and teaching activities take place including, but not limited to, talking at inappropriate times, drawing unwarranted attention to self, engaging in loud or distracting behaviors, [or] displaying defiance or disrespect of others..." Plaintiff contends that the term "disrespect," as used within the Rule and applied to Plaintiff is "overly broad in [its] attempt to regulate conduct," and the Rule is therefore unconstitutional. *See* Complaint at p. 4-5.

The term "disrespect" appears within the Rule as an example of a type of behavior that is prohibited by Defendant only if the disrespectful act is disruptive, obstructive or if it interferes with classroom activities. Plaintiff at no time alleges that his behaviors were not disruptive or obstructive, but only that the allegedly vague use of the term "disrespect" within the rule violates his First Amendment rights. Under the standards applicable to classroom speech, professors may properly prohibit a broad range of in-class activities, including disruptive speech, provided that they do not single out certain speech because it expresses a protected point of view.

The injunctive relief Plaintiff requests is based on the supposition that OAR 573-075-0040(2)(o)(B) is overly broad thus constituting a violation of Plaintiff's First Amendment right to free speech. Plaintiff's motion for injunctive relief seeks (1) a declaration that OAR 573-075-0040(2)(o)(B) is unconstitutional and, thus, void; and (2) the removal of the disciplinary designations made by Defendant on Plaintiff's school records. Plaintiff's claim fails under the

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

well-established frameworks of analysis of First Amendment overbreadth claims and case law addressing classroom speech. Based on that established precedent, universities have broad authority to establish rules and regulations to promote learning, including rules addressing classroom conduct. Only where such rules are substantially overbroad and not subject to a narrowing construction can they be found to violate the First Amendment. Accordingly, Plaintiff cannot succeed on the merits of his claims, and the Court should deny Plaintiff's motion for preliminary injunctive relief.

### A. Injunctive Relief

The United States Supreme Court recently addressed the standard for issuing preliminary injunctions. *See Winter v. Natural Resources Defense Council, Inc. et al.*, 129 S Ct 365 (2008). In *Winter*, the Supreme Court held that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374; *see also Stormans, Inc. v. Selecky*, 571 F3d 960, 977-78 (9th Cir. 2009). The party seeking an injunction has the burden of meeting all four of these prongs. *Winter*, 129 S Ct. at 374. A plaintiff's burden is to make "a clear showing that the plaintiff is entitled to [injunctive] relief" because injunctive relief is "an extraordinary remedy." *Id.* at 376 (citation omitted); *see also Stormans, Inc.*, 571 F3d at 977.

In *Winter*, the Supreme Court refuted the Ninth Circuit's prior "possibility of irreparable harm" standard as "too lenient." *Id.* at 375. Parties seeking relief are required "to demonstrate that irreparable damage is *likely* in the absence of an injunction." *Id.* The Ninth Circuit has applied *Winter*, holding that "'[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.'" *Stormans, Inc.*, 571 F3d at 978, (quoting *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F3d 1046, 1052 (9th Cir. 2009)).

### B. Overbreadth Claims

Page 3 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

The legal standards for a facial overbreadth challenge are well-established. "Where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). In *Broadrick*, Oklahoma employees challenged a statute prohibiting political activities by state employees. In analyzing whether the statute was overbroad in violation of the First Amendment, the Court wrote that "overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." *Broadrick*, 413 U.S. at 614. The Court found that Oklahoma's statute was not overbroad, but instead that the statute sought "to regulate political activity in an even-handed and neutral manner." *Id.* at 616. Finally the Court found that the statute was regulating "a substantial spectrum of conduct that is as manifestly subject to state regulation." *Id.*

Courts have consistently recognized that application of the overbreadth doctrine is "manifestly, strong medicine," *Broadrick*, 413 U.S. at 613, and that "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections" in order for an overbreadth challenge to succeed. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). In a recent opinion on the subject, the Supreme Court stressed that the burden to demonstrate *substantial* overbreadth is to be "vigorously enforced." *United States v. Williams*, 128 S.Ct. 1830, 1838 (2008). The Court again emphasized that to be invalidated, a law must be substantially overbroad not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. *Id.* In addition, if a statute is readily susceptible to a narrowing construction that would make it constitutional, it will be upheld. *Virginia v. American Booksellers Association*, 484 U.S. 383, 397 (1988).

C. **Speech in University Classrooms**

"Classrooms are not public forums." *Linnemeir v. Board of Trustees of Purdue University*, 260 F.3d 757, 759 (7th Cir. 2001). *See also California Teachers Ass'n v. Davis*, 64

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

F.Supp.2d 945, 953 (C.D.Cal. 1999) ("a classroom is not a public forum"); *Williams v. Vidmar*, 367 F.Supp.2d 1265, 1276 (N.D.Cal. 2005) ("an elementary school classroom is a non-public forum"). "University campuses are different from other public forums such as streets or parks. A university's mission is education, and a university has the authority to impose reasonable regulations compatible with that mission upon the use of its campus facilities." *Widmar v. Vincent*, 454 U.S. 263, 267-268 (1981).

"[T]he state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speakers' views." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44-46 (1983) (union challenged collective bargaining agreement between a school district and an opposing union granting exclusive access to an internal district mail system). "A college has the inherent power to promulgate rules and regulations… it has the inherent power properly to discipline … it may expect that its students adhere to generally accepted standards of conduct." *Healy v. James*, 408 U.S. 169, 192 (1972) (quoting with approval *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1089 (8th Cir. 1969) (local chapter of a national student organization challenged a state college's refusal to recognize the group as a campus organization).

"In addition to the College administration's broad rulemaking power to assure that the traditional academic atmosphere is safeguarded, it may also impose sanctions on those who violate the rules." *Healy*, 408 U.S. at 194 at n. 24. Furthermore, "where state-operated educational institutions are involved, [the Supreme Court] has long recognized the need for affirming the comprehensive authority of the states and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker v. Des Moines Independent School District*, 393 U.S. 503, 507 (1969). In *Tinker,* the Court held that a student wearing an armband to school in protest of the Vietnam War was protected speech under the First Amendment and that "students are entitled to freedom of expression of their

Page 5 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

views." *Id.* at 511. Despite this broad holding in favor of constitutional protections for students, however, the Court further found that school officials can abridge speech in classrooms when the *"conduct by the student, in class or out of it...materially disrupts classwork or involves substantial disorder or invasion of the rights of others." Id.* at 513 (emphasis added).

College professors have even broader control of curricular speech than primary or secondary teachers. *See Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002) (opinion of Graber, J.) ("The Supreme Court's jurisprudence does not hold that an institution's interest in mandating its curriculum and in limiting a student's speech to that which is germane to a particular academic assignment diminishes as students age. Indeed, arguably the need for academic discipline and editorial rigor increases as a student's learning progresses.") (graduate student sued university under First Amendment claims for failure to approve thesis). Academic freedom is a doctrine that encompasses "the idea that universities and schools should have the freedom to make decisions about *how and what to teach.*" *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 237 (2000) (Souter, J., concurring in the judgment) (emphasis added).

Current academic literature and secondary sources speaking to the application of the First Amendment in university classrooms also highlight the importance of a professor's ability to regulate disruptive speech in the classroom and outline court-granted authority for the professor to do so. *See* Anne Proffitt Dupre, *Open Windows* (2000) at 3-4, 7, *available at* http://justice.law.stetson.edu/excellence/Highered/archives/2000/Open%20Windows.pdf ("allowing misconduct and incivility to remain uncheck would undermine the very essence of the academic environment in the community of learning") ("[I]ncivility is an anathema of true *academic* freedom in the college and university community, because it does not further the educational mission. Indeed, incivility actually undermines the goal of achieving a marketplace of ideas in the academic community"). *See also* Kelly Sarabyn, *The Twenty-Sixth Amendment: Resolving the Federal Circuit Split over College Students' First Amendment Rights*, 14 Tex. J. on C.L. & C.R. 27, 43 (2008) ("[A] university's mission is education and decisions of [the]

Page 6 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Court have never denied a university's authority to impose 'reasonable regulations compatible with that mission upon the use of its campus facilities.' [This language] echoes the analysis the Court applied to secondary schools and blends together the functions of both institutions as simply 'education'") (internal citations omitted); Christopher N. LaVigne, *Havelwood v. Kuhlmeier and the University: Why the High School Standard is Here to Stay*, Fordham Urb. L.J. 1191, 1215 (2008) ("the Court has always recognized universities' substantial power to regulate students [and] its recent college speech opinions have consistently applied a public forum analysis and given great deference to universities' autonomous decision-making authority").

### D. The Standard Applicable to Speech in Classrooms

With the foregoing principles in mind, the Ninth Circuit's categorization of the different standards applicable to student speech makes sense. The Ninth Circuit has identified three categories for the regulation of student speech in the K-12 setting:

> We have discerned three distinct areas of student speech from the Supreme Court's school precedents: (1) vulgar, lewd, obscene, and plainly offensive speech, (2) school-sponsored speech, and (3) speech that falls into neither of these categories. We conclude, as discussed below, that the standard for reviewing the suppression of vulgar, lewd, obscene, and plainly offensive speech is governed by *Fraser*, 478 U.S. at 683-85, school-sponsored speech by *Hazelwood*, 484 U.S. at 273, and all other speech by *Tinker*, 393 U.S. at 513-14.

*Chandler v. McMinnville School Dist.*, 978 F.2d 524, 529 (9th Cir. 1992)

Plaintiff's argument fails even under the least restrictive test.

> The third category involves speech that is neither vulgar, lewd, obscene, or plainly offensive, nor bears the imprimatur of the school. To suppress speech in this category, school officials must justify their decision by showing 'facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities.' However, the 'First Amendment does not require school officials to wait until disruption actually occurs. . . . In fact, they have a duty to prevent the occurrence of disturbances.'" (internal citations omitted).

*Id.* Notably, a test giving more deference to college professors is likely appropriate. (*See Brown*, 308 F.3d at 951, supra).

> After reviewing the precedents concerning students' rights of free speech within a public school, we find few cases that address the conflict between the student's rights of speech in the classroom and a teacher's responsibility to encourage

Page 7 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

> decorum and scholarship, including her authority to determine course content, the selection of books, the topic of papers, the grades of students and similar questions. Students do not lose entirely their right to express themselves as individuals in the classroom, but federal courts should exercise particular restraint in classroom conflicts between student and teacher over matters falling within the ordinary authority of the teacher over curriculum and course content. 'Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.'

*Settle v. Dickson County Sch. Bd.*, 53 F.3d 152, 155 (6th Cir. Tenn. 1995), quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).

Thus, in disputes about whether a student's in-class speech was potentially disruptive, the applicable standard is one of deference to the judgment of school authorities. In order to prevail on Plaintiff's as applied challenge, the university need only demonstrate facts "which *might* reasonably have led" them to determine that Plaintiff's classroom criticism of his peers, faculty, and SOU *could* have led to a substantial disruption or materially interference with classroom activities and/or learning. Contrary to Plaintiff's implicit suggestion, SOU need not demonstrate that Plaintiff's speech caused an actual substantial disruption. Critically, this case does not involve a rule that prohibits certain types of speech, such as hate. The regulation is viewpoint neutral. Thus, even if there may be issues of fact regarding Plaintiff's challenge, Plaintiff's overbreadth claim fails as a matter of law.

### E. Plaintiff's Points and Authorities

In his Complaint, Plaintiff discusses at length the right students have to free speech on University campuses, but Plaintiff fails to articulate the proper analysis of overbreadth claims under the First Amendment. Plaintiff also disregards the long-standing right of universities to regulate and discipline activities that cause disruption within the classroom. Plaintiff argues that universities are unlimited "sphere[s] of free expression," *Rust v. Sullivan*, 500 U.S. 173, 200 (1991), *See* Complaint at p. 12. In doing so, Plaintiff fails to recognize that courts have long held that universities may properly regulate college speech when the speech unduly "disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513.

Page 8 -   DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiff relies heavily on the holding in *Keyishian v. Board of Regents*, 385 U.S. 589 (1967) for the proposition that free speech cannot be abridged by universities. In *Keyishian*, the plaintiffs challenged a New York law designed to prevent subversive employees working for public universities. The Court in *Keyishian* was analyzing a statute that applied to the employment contracts of professors, and, by its own admission, was so broad that under the statute "one commits the felony of advocating criminal anarchy if he ... publicly displays any book ... containing or advocating, advising or teaching the doctrine that organized government should be overthrown by force, violence or any unlawful means." *Id.* at 598 (internal citations omitted). The Court held that the law was unconstitutional because the wording of the statute was overly vague. *Id.* at 604.

This case is distinguishable from *Keyishian*. The statute in *Keyishian* was directed at ensuring that specific political views were not expressed by members of the faculty anywhere on campus (possibly going as far as causing a teacher "who carries a copy of the Communist Manifesto on a public street" to be fired for criminal anarchy, *Id.*), while this Rule is directed specifically at the disruption, obstruction or interference with educational activities in classrooms. OAR 573-075-0040(2)(o)(B).

*Keyishian* is a case involving the academic freedom of college faculty. The doctrine of academic freedom is of no assistance to Plaintiff. Plaintiff is neither faculty nor a university employee. Rather, the doctrine cuts against Plaintiff's argument, as Plaintiff asks this Court to interfere with SOU professors' ability to maintain a positive learning environment in their classrooms. *Keyishian* provides Plaintiff no support for his arguments.

Plaintiff also relies on the proposition set forth in *Adamian v. Jacobsen*, 523 F.2d 929 (9th Cir. 1975) that when considering the overbreadth of a regulation or statute, the court "require[s] of it greater precision and specificity than would be necessary to fulfill...due process requirements." *See* Complaint at p. 12. *Adamian* also involves the rights of faculty, not students. With this argument, Plaintiff also neglects to acknowledge that the disciplinary actions taken

Page 9 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

against him were related to Plaintiff's conduct within the classroom, not Plaintiff's speech elsewhere on campus. Unlike the plaintiff in *Adamian* who was challenging being dismissed from employment for demonstrating during a school assembly, the Plaintiff here was disciplined because of the tone and manner of his classroom discussions with other students. Because the Rule is focused on conduct within the classroom (specifically, the manner in which a student conveys an opinion in class), the "overbreadth of the statute must not only be real, but substantial as well." *Broadrick*, 413 U.S. at 615. For the reasons set forth above, the Rule is constitutional on its face.

Finally, Plaintiff asserts that "[w]here the guarantees of the First Amendment are at stake the [Supreme] Court applies its vagueness analysis strictly." *Bullfrog Films Inc. v. Wick*, 847 F.2d 502, 512 (9th Cir. 1988), *See* Complaint at p. 12. Again, Plaintiff cites a case that is not on point in that it does not address classroom speech and conduct. In *Bullfrog Films*, the plaintiffs challenged the application of a law granting the United States Information Authority the ability to grant or refuse permits for the duty-free import of films into the United States. *Bullfrog Films Inc.*, 847 F.2d at 503-504. Plaintiff fails to cite the extensive case law that speaks to speech within classrooms on campuses and the specific framework of analysis for regulations to be found overbroad. His overbreadth arguments fails as a matter of law.

### F. Plaintiff has shown no chance of success on the merits.

To demonstrate that he is likely to succeed on the merits of his over breadth claim, Plaintiff must both demonstrate that OAR 573-075-0040(2)(o)(B) is overly broad and that Defendants acted outside the scope of constitutionally prescribed limits on speech in classrooms. Plaintiff cannot show that the use of the term "disrespect" within the Rule is overly broad to level of a constitutional violation. Plaintiff's as applied claim also fails because he has not demonstrated any probability of success on the merits of that claim.

In order for a policy to be declared unconstitutionally overbroad, it must *"substantially compromise recognized First Amendment protections." Vincent*, 466 U.S. at 801 (emphasis

Page 10 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

added). Plaintiff contends that his speech was "political and academic in nature" and therefore protected by the First Amendment. *See* Complaint at p. 5. Plaintiff further suggests that Defendant's disciplinary rules "are not narrowly tailored to advance a compelling state interest." *Id.* Plaintiff is mistaken. As discussed above, in *Tinker*, the Supreme Court found a "need for affirming the comprehensive authority of the states and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." 393 U.S. at 507 (1969). The Rule is permissible under *Tinker*.

In this case, Plaintiff's behavior was directly disruptive of active classroom discussions through the online classes' message boards. The disciplinary measures Defendant took against Plaintiff were born not out of an alleged ambiguity in a regulation that chills free speech, but they instead were directed at the disruptive manner in which Defendant conveyed his ideas in the classroom. By Plaintiff's own admission, Defendant warned Plaintiff regarding his "abrasiveness," "hostility" and "tone" when "interacting with members of the campus community." *See* Complaint at p. 5. Defendant did not retaliate against Plaintiff for any political speech, but instead worked within its specific statutory authority to address Plaintiff's disruptive conduct in classroom discussions.

When Defendant notified Plaintiff regarding his behavior in classroom discussions and subsequently disciplined Plaintiff for a failure to comply with the Rule, Defendant was merely acting within its power to "impose sanctions on those who violate the rules." *Healy*, 408 U.S. at 194 at n. 24. Not only does the language of the Rule not "substantially compromise recognized First Amendment protections," *Vincent*, 466 U.S. at 801, it seeks to protect the academic freedom of educators "to prescribe and control conduct in the schools." *Tinker*, 393 U.S. at 507. To accept Plaintiff's argument would impinge on Plaintiff's professors' academic freedom to maintain the learning environment of their classrooms and protect the rights of other students in class discussion. Defendant was merely regulating a spectrum of conduct that courts have found

Page 11 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

to be subject to state regulation through an administrative rule that speaks specifically to speech that disrupts the classroom environment.

Plaintiff has not made a sufficient showing of probability of success on the merits on his as applied claim. The applicable standard requires deference to the judgment of university professors. Moreover, Plaintiff has not presented the court with sufficient information to allow it to determine that it is likely Plaintiff was disciplined for a reason prohibited by the constitution.

### G. The Balance of Hardships is in Defendants' Favor

Plaintiff complains that the Rule prevents him from exercising his free speech rights in class. As the above discussions make clear, plaintiff is mistaken as to the extent of those rights. He asks this court to rule that SOU professors cannot maintain classroom discipline where students engage in disruptive speech in classrooms. The academic freedom of SOU professors and the rights of other students to classroom environments free from disruptive speech that interferes with their learning outweighs the interest of plaintiff in using classrooms as a public forum. The court should not allow Plaintiff to flout the valid SOU rule during the pendency of this lawsuit.

### H. Plaintiff has not demonstrated a real threat of irreparable injury

Plaintiff complains that he cannot speak freely in his SOU classes. He identifies only two applications of the rule to him, and in both cases indicates that SOU provided him an opportunity to conform his conduct to the rule before disciplining him. Whether Plaintiff is again disciplined is a matter within plaintiff's control.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## III. Conclusion

Plaintiff has failed to meet his burden in support of his motion for preliminary injunction. The applicable rule is constitutional and not over broad. Plaintiff has not demonstrated a sufficient likelihood of success on the merits, nor that the balance of hardships is in his favor, nor that the threat of injury is more than conjectural, nor made any demonstration that an injunction is in the public interest. Defendants request that plaintiff's motion be denied.

DATED this 19 day of August, 2009.

Respectfully submitted,

JOHN R. KROGER
Attorney General

_____
JOSEPH G. GROSHONG #04010
Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
joseph.g.groshong@doj.state.or.us
Of Attorneys for Defendants Southern Oregon
    University; Mary Cullinan; Casey Clithero;
    Janay Haas; and Lore Rutz-Burri

Page 13 - DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION
JGG/say/1570059-v2

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## CERTIFICATE OF SERVICE

I certify that on August 1̭ʰ, 2009, I served the foregoing DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Peter T. Harrell<br>P. O. Box 131<br>Ashland, Oregon 97520<br>    Plaintiff Pro Se | ___ HAND DELIVERY<br>_X_ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-MAIL<br>___ E-FILE |
| Peter T. Harrell<br>P.O. Box 1731<br>Yreka, CA 96097<br>    Plaintiff Pro Se | ___ HAND DELIVERY<br>_X_ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-MAIL<br>___ E-FILE |

*(signature)*

JOSEPH G. GROSHONG #04010
Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
joseph.g.groshong@doj.state.or.us
Of Attorneys for Defendants Southern Oregon
    University; Mary Cullinan; Casey Clithero;
    Janay Haas; and Lore Rutz-Burri

Page 1 -   CERTIFICATE OF SERVICE
         JGG/cbh/931519
                         Department of Justice
                         1162 Court Street NE
                         Salem, OR 97301-4096
                     (503) 947-4700 / Fax: (503) 947-4791