IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PETER T. HARRELL,

        Plaintiff,

v.

SOUTHERN OREGON UNIVERSITY, et al.,

        Defendants.

Case Number CV 08-3037-CL

**REPORT & RECOMMENDATION**

Clarke, Magistrate Judge:

Plaintiff Peter T. Harrell filed a motion for preliminary injunction against Defendants Southern Oregon University ("SOU"), Mary Cullinan, Casey Clithero, Janay Hass, Lore Rutz-Burri, and John Does 1-20, et al. He asks the Court to "temporarily and permanently enjoin Defendants from enforcing Or. Admin. R. 573-075-0040, entitled "Proscribed Conduct" ("Proscribed Conduct Policy"), and to declare this rule "repugnant to the Constitution, both generally due to vagueness and overbreadth, and as applied to Plaintiff" and thus void. He also asks that Mr. Clithero's designations on his school record of "official university warning" and "university probation" be removed along with all other related references. (Compl. 10.)

For the reasons set forth below, this motion, contained in Plaintiff's complaint (#2) should be denied.

REPORT & RECOMMENDATION 1

## I. Background

Plaintiff enrolled at SOU in the Fall of 2007 with a declared major of Criminology and Criminal Justice. (Compl. 3.) As part of his course work, Plaintiff enrolled in "Theories of Criminal Behavior," an online class taught completely via the Internet, addressing political, sociological, criminological, and psychological theories on crime. (Compl. 4.) Plaintiff asserts that these topics are controversial and provoke discussion. Students participated in the class by posting comments and responses to topics, provided by the instructor, to the discussion board forum. Plaintiff asserts that he was subjected to "public vilification, harassment, embarrassment, and ultimately formal censure by the defendants." (Compl. 4.) Defendants assert that Plaintiff engaged in classroom disruption and academic disrespect by being disrespectful to fellow classmates and the instructor in an online forum on several occasions and failing to abide by a provision of the Student Code of Conduct.[1] (Compl. 4.)

Mr. Clithero, the coordinator of student conduct, explained in his November 15, 2007 letter, "your actions diminished the comfort level of others to engage in classroom discourse, and showed further disrespect to the course professor. . . . your abrasiveness with other students and hostility toward certain University employees is a cause for concern. I caution you in the future to be mindful of your tone when interacting with members of the campus community, particularly in your distance education courses." (Pl.'s Reply, Ex. A-1.) The student conduct hearing record reported that Plaintiff had been found responsible for classroom disruption:

---

[1] The Proscribed Conduct Policy provides, "[d]isruption, obstruction or interference with educational activities in classrooms, lecture halls, campus library . . . or any other place where education and teacher activities take place including but not limited to, talking at inappropriate times, drawing unwarranted attention to self, engaging in loud or distracting behaviors, displaying defiance or disrespect of others, or threatening any University student or employee." Oregon Administrative Rule 573-075-0040(o)(B).

REPORT & RECOMMENDATION   2

"Peter elected not to attend his hearing, and gave advance notice of that intention. Based on the posts directed at other students in the files, as well as the criticism of the professor in a public forum, I found that his behavior constituted a disruption to the online classroom." (Pl.'s Reply, Ex. A-2.)

The following term, Plaintiff enrolled in "Law of Criminal Procedure" taught by Ms. Haas. This was also an online class that used a discussion forum. On March 6, 2008, Plaintiff received a letter from Mr. Clithero dated February 25, 2008. This letter notified Plaintiff that a report had been filed charging him with classroom defiance and disrespect. (Compl., Ex. A-1.) It advised Plaintiff to reply by February 29, 2008, to be afforded hearing rights. (Compl. 6.) Mr. Clithero identified what Defendants regarded as objectionable comments, specifically Plaintiff's posts on the discussion board: "clearly you haven't bothered to read the rest of the board on this topic" and "but you clearly haven't bothered to do your reading. Feel free to post some concrete information on your own, however." (Compl., Ex. A-3.)

Plaintiff responded to this letter immediately upon receipt on March 6, 2008, with his objections to the hearing. He disagreed with the Proscribed Conduct Policy and its application to him. He also expressed his intent to give notice of his updated claims per the Oregon Tort Claims Act. Defendant Clithero responded on March 7, 2008, and explained that a hearing had been held on February 29, 2008, in his absence, regarding the alleged violations of university rules. (Compl. 7.) At this hearing, Plaintiff was found responsible for the violations. He was sanctioned with university probation: "Please be advised that any further violations will result in more severe sanctions and restrictions to your student account, including the possibility of your disengagement from the University." (Pl.'s Reply, Ex. B.) Ms. Haas described Plaintiff's

classroom performance: "Peter Harrell dropped my winter term CCJ 413 class, after shredding the other students' esprit de corps irreparably." (Pl.'s Reply, Ex. C-1.)

On March 31, 2008, Plaintiff filed this complaint for civil rights violations and pendent state law claims against all defendants. Defendant Southern Oregon University filed a motion to dismiss § 1983 claims on September 2, 2008. U.S. Magistrate Judge Mark Clarke recommended that § 1983 claims against Defendant SOU be dismissed. He also recommended §§ 1985, 1986, and 1988 claims and pendent state law claims against all defendants. Judge Owen Panner adopted this recommendation on February 2, 2009.

On July 28, 2009, this court held a status conference in this case. Plaintiff asked the Court to rule on the motion for preliminary injunction contained in his original pleading. This matter was fully brief and under advisement on September 1, 2009.

## II. Standard of Review

"Injunctive relief is appropriate when a party demonstrates '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir.2007) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). When deciding whether injunctive relief is appropriate, a "court must balance the equities between the parties and give due regard to the public interest." Id. (quoting Idaho Watersheds Project v. Hahn, 307 F.3d 815, 833 (9th Cir.2002)). District courts have "broad latitude" to fashion equitable relief. Id. (quoting High Sierra Hikers Ass'n v. Blackwell,

390 F.3d 630, 641 (9th Cir.2004)).

The Supreme Court has indicated that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (discussing the issuance of a preliminary injunction). Courts generally recognize a "significant public interest in upholding First Amendment principles." Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 974 (9th Cir.2002) (collecting cases finding that the public interest weighs in favor of granting preliminary injunctions when First Amendment freedoms are at issue). However, the significant public interest in protecting First Amendment privileges may be "overcome by a strong showing of other competing public interests, especially where the First Amendment activities of the public are only limited, rather than entirely eliminated." Id. (citations omitted).

## III. Standing

As a threshold matter, Plaintiff must have standing to file a claim alleging violation of his First Amendment rights. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir.2004) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, (1998)).

Generally, to establish constitutional standing, "a plaintiff 'must show that (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' " Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),

REPORT & RECOMMENDATION 5

Inc., 528 U.S. 167, 180-81 (2000)). "Standing for a First Amendment challenge exists when a reasonable reading of the disputed statute puts plaintiffs in fear of prosecution." Powell's Books, Inc. v. Myers, 599 F.Supp.2d 1226, 1237 (9th Cir. 2008).

On the facts alleged in the complaint, Plaintiff has standing to challenge the Proscribed Conduct Policy. He alleges that he was injured because the statute on its face and as applied to him violates his First Amendment rights.

## IV. Speech May Be Subject to Government Regulation

Some regulation of an individual's First Amendment rights is permitted. As the Supreme Court explained, "We cannot accept the view than an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376 (1968). The First Amendment should not be construed to provide "unrestricted and unbridled license giving immunity for every possible use of language and preventing punishment of those who abuse this freedom." Blackwell v. Issaquena County Board of Education, 363 F.2d 749, 753-54 (5th Cir. 1966). State officials may limit free speech when "their protection of legitimate state interests necessitates an invasion of free speech." Burnside v. Byars, 363 F.2d 744, 748 (5th Cir. 1966) (citations omitted). The state's interest in maintaining an educational system can necessitate limitations "giving rise to a balancing of First Amendment rights with the duty of the state to further and protect the public school system." Id.

Further, the court has recognized that "the establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning." Id. Regulations on free speech are reasonable that "are

essential in maintaining order and discipline on school property." For example, "school rules which assign students to a particular class, forbid unnecessary discussion in the classroom and prohibit exchange or conversation between students are reasonable even though these regulations infringe on such basic rights as freedom of speech and association, because they are necessary for the orderly presentation of classroom activities." Id. "[A] reasonable regulation is one which measurably contributes to the maintenance of order and decorum within the educational system." Id.

School regulation of the First Amendment, however, is not left unchecked. Regulation is unwarranted "where the exercise of such rights in the school buildings and school rooms do not materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." Id. at 749. "A government regulation is sufficiently justified . . . if it furthers an important or substantial government interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." O'Brien, 391 U.S. at 377. The court should evaluate whether the speech or conduct "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 513 (1969).

When speech may be construed as "school sponsored," there are other considerations. For example, when speech may be characterized as part of the school curriculum, "[e]ducators are entitled to exercise greater control over this . . . form of student expression to assure that participants learn whatever lessons the activity is designed to teach, that readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of

the individual speaker are not erroneously attributed to the school." Hazelwood School Dist. v. Kuhlmeier, 484 U.S. 260, 271 (1988) (finding that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns").

The Ninth Circuit has clarified the limits First Amendment regulations in public schools. Interpreting the test in Tinker, the court looks at the effect of a student's speech on school activities and rights. Pinard v. Clatskanie School District 6J, 467 F.3d 755, 766-67 (9th Cir. 2006) (citations omitted) ("[O]ur cases demonstrate, Tinker's test for determining whether the First Amendment protects "third category" student speech examines only the *effect* of the speech on school activities and the rights of others."). To infringe upon a student's First Amendment rights, school officials must "show facts which might reasonably have led [them] to forecast substantial disruption or material interference with school activities." Id. at 767.

## V. Plaintiff's Facial Attack on Proscribed Conduct Policy Fails

Plaintiff poses a facial attack on the Proscribed Conduct Policy arguing that it is overbroad and vague and thus invalid on its face.

### A. Overbroad Statutes May Place an Undue Burden on Free Speech

"An individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court - those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1984) (citations omitted).

The Supreme Court has recognized the overbreadth doctrine in the limited context of First Amendment facial challenges. See Schall v. Martin, 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (stating that "outside the limited First Amendment context, a criminal statute may not be attacked as overbroad" (citing New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). This doctrine recognizes that "when overly broad statutory language seems to sweep protected First Amendment expression directly into the scope of a regulation affecting speech, or indirectly places an undue burden on such protected activity, free expression can be chilled even in the absence of the statute's specific application to protected speech." Am. Booksellers v. Webb, 919 F.2d 1493, 1499 (11th Cir.1990).

The overbreadth analysis has three steps. First, a court must construe a statute's reach; that is, determine exactly what speech or conduct is covered. United States v. Williams, --- U.S. ----, 128 S.Ct. 1830, 1838 (2008). Second, the court must determine whether the statute "criminalizes a substantial amount of protected expressive activity." Id. at 1841. Third, the court must determine whether the statute is "readily susceptible" to a limiting construction that would make it constitutional. See Virginia v. Am. Booksellers, 484 U.S. 383, 397 (1988) (citing Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975)).

### B. The Proscribed Conduct Policy Is Not Overbroad

Plaintiff argues that the Proscribed Conduct Police violates his First Amendment rights of free speech. The Proscribed Conduct Policy prohibits,

> [d]isruption, obstruction or interference with educational activities in classrooms, lecture halls, campus library . . . or any other place where education and teacher activities take place including but not limited to, talking at inappropriate times, drawing unwarranted attention to self, engaging in loud or distracting behaviors, displaying defiance or disrespect of others, or threatening any University student

or employee.

Or. Admin. R. 573-075-0040(o)(B).

Plaintiff asserts that the rule is too broad in its attempt to regulate conduct and "impermissibly regulate[s] the content of speech, particularly political and academic speech relating to ideas and concepts embodied in the subject matter of the class at issue." (Compl. 5.)

In evaluating the scope of statute and how it infringes upon free speech, the Court determines that the Proscribed Conduct Policy regulates the learning environment, a sphere which the courts have preserved fro the schools to regulate in specific circumstances. The school may infringe upon free speech if it can show facts that would reasonably lead them to conclude the speech might lead to a disruption in school activities. Pinard, 467 F.3d at 767.

Here, the regulation is sufficiently justified. It furthers an important governmental interest of maintaining order and decorum in the online learning classroom. It is unrelated to the suppression of free speech in that it attempts not to limit the ideas of an individual but the way in which an individual interacts with others, unrelated to protected speech. Further, the restriction is only incidental to First Amendment freedoms. Individuals are not restricted from freely expressing their ideas, but they are limited from disrespecting others. It is possible to express one's idea without intentionally disrespecting others in the process. A student's "free speech" to disrespect other students and teachers is not protected by the First Amendment. See O'Brien, 391 U.S. at 377.

Similar to the regulations addressed by the Fifth Circuit in Burnside, this regulation is "necessary for the orderly presentation of classroom activities" and "measurably contributes to the maintenance of order and decorum within the educational system." Burnside, 363 F.2d at

REPORT & RECOMMENDATION 10

748. SOU has alleged facts that Plaintiff's disruption interfered with school activities, specifically chilling the classroom discussion. Ms. Hass described Plaintiff as "shredding" other students' spirits and Mr. Clithero concluded that his actions "diminished the comfort level of others to engage in classroom discourse." (Pl.'s Reply, Ex. C-1, Ex. A-1.)

Plaintiff argues that the Proscribed Conduct Policy ignores controlling court precedent. He cites several cases, including Saxe v. State College Area School District, to support his contention that SOU's policy violates his rights. 240 F.3d 200 (3rd Cir. 2001). Plaintiff correctly points out that the Third Circuit concluded, "the free speech clause protects a wide variety of speech that listeners may consider deeply offensive, including statements that impugn another's race or national origin or that denigrate religious beliefs. Where laws against harassment attempt to regulate oral or written expression on such topics, however detestable the views expressed may be, we cannot turn a blind eye to the First Amendment implications." Id. at 206 (citations omitted). Indeed, "if there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea offensive or disagreeable." Id. at 209 (citing Texas v. Johnson, 491 U.S. 397, 414 (1989)).

However, Plaintiff's case is distinguishable. In Saxe, the Third Circuit found that a school's "anti-harassment policy" was unconstitutionally overbroad. This policy had a far broader reach than the Proscribed Conduct Policy. The anti-harassment policy had a general statement: "[m]embers of the school community are expected to treat each other with mutual respect. Disrespect among members of the school community is unacceptable behavior which threatens to disrupt the school environment and well being of the individuals. Id. at 218. Further, the court concluded that the policy's "hostile environment" prong could conceivably

cover speech could "include much 'core' political and religious speech." Id. at 217.

SOU's policy, in contrast, prohibits conduct that is "disruption, obstruction, or interference with educational activities," which is clearly within the scope of schools to regulate. See Pinard, 467 F.3d at 767. Further, SOU objected to Plaintiff's comments, but these comments were not of core religious of political speech, as he alleges. Simply because the class is controversial and addressed political issues does not give students free reign to belittle classmates so long as they assert it is the expression of an idea protected by the First Amendment.

The statute's scope does not unconstitutionally infringe upon free speech, and thus is not overbroad. Considering the remaining two factors of the overbreadth analysis is thus unnecessary.

### C.    Proscribed Conduct Policy Is Not Vague

Plaintiff argues that the Proscribed Conduct Policy is impermissibly vague. The vagueness doctrine is one concerning due process: "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Construction Co., 269 U.S. 385, 391 (1926) (citations omitted).

Plaintiff contends the terms "disrespect" and "disrespectful" are "infirm generally" and are vague by not giving fair notice of the conduct that is prohibited. "[T]he SOU policy . . . does not provide fair notice of what conduct or speech will violate the policy." (Pl.'s Reply 9.) He also argues that the policy results in an unrestricted delegation of power that gives rise to the "imposition of arbitrary and capricious standards or definitions." (Pl.'s Reply 9.)

This Court does not agree. Though the term "disrespect" taken out of context may at first appear vague, reading the section of the policy on a whole, however, gives greater clarification to put Plaintiff and other students on notice of what is prohibited. Specifically, the policy prohibits disruption or interference with classroom activities. One example of such a disruption is disrespect of students and instructors and defiance of instructors. Rather than prohibiting "disrespect" on a general, ubiquitous level, as Plaintiff suggests, the policy prohibits disrespect that would interfere with educational activities. This is not so vague that the students cannot anticipate what behavior would be prohibited.

## VI. Plaintiff's "As Applied" Attack on the Proscribed Conduct Policy Fails

Plaintiff also argues that the Proscribed Conduct Policy violates his First Amendment rights as it is applied to him. "Because Plaintiff's censured speech was directly related to the topics at issue in the class, the academic standards relating thereto, and was political and academic in nature, it was protected by [the First Amendment] and the actions taken by the defendants against Plaintiff violate clearly established rights." (Compl. 5.)

For many of the same reasons discussed above, this claim also fails. Plaintiff argues that because his objectionable speech is connected in some way, even tangentially, to his personal political convictions, he is entitled to express himself in any way he chooses. It is possible, however, for Plaintiff to express his political views without insulting other students. The right to express his political views is not infringed with the requirement that refrain from disrupting class and interfering with the course objectives by being disrespectful and inhibiting discussion. Here, SOU determined that Plaintiff was in his speech to his classmates, via the online discussion board. His comments did not express his political opinions, as he asserts. The comments belittle

REPORT & RECOMMENDATION 13

other students' work and their contribution to the discussion. His comments imply that the students did not do their work and in essence have nothing to contribute to the discussion. Such comments chilled further discussion, disrupting the class and the instructor's ability to teach.

There was sufficient notice to Plaintiff that his commentary was prohibited under the policy. In applying the Proscribed Conduct Policy, Defendants gave warning with a letter in November 2007 and then applied sanctions the following March after similar classroom disrespect was reported. The ultimate effect was "shredding the esprit de corps" and such effect is enough to justify the school's regulation and the implementation of the sanctions. (Pl.'s Reply, Ex. C-1.) While Plaintiff may disagree on the effect, the courts have clearly granted the state the power to limit free speech for this purpose.

This is not outside the wide latitude the courts have given schools to regulate. As the Supreme Court noted, "the College administration's broad rulemaking power to assure that the traditional academic atmosphere is safeguarded, it may also impose sanctions on those who violate the rules." Healy v. James, 408 U.S. 169, 194 fn. 24 (1972). Plaintiff has not shown that the Proscribed Conduct Policy, as applied, violated his right causing any injury.

## VII. Plaintiff's Motion for Preliminary Injunction Should Be Denied

Plaintiff has not met any of the four requisite requirements to be granted preliminary injunction He has not shown an irreparable injury because he has not shown a violation of his First Amendment rights. With no injury it is impossible to consider available remedies, to balance the hardships of the parties, and to evaluate the public interest on this claim. See N. Cheyenne Tribe v. Norton, 503 F.3d 836, 843 (9th Cir.2007) (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).

## VIII. Conclusion

Plaintiff's motion for preliminary injunction should be denied. He has not shown that the Proscribed Conduct Policy violates his First Amendment Rights on its face or as applied to him. Accordingly he has shown no injury to warrant a preliminary injunction.

## IX. Recommendation

Based on the foregoing, it is recommended that the Plaintiff's motion for preliminary injunction be denied (#2).

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by **November 2, 2009**. If objections are filed, any responses to the objections are due within 10 days,* see *Federal Rules of Civil Procedure 72 and 6.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 16 day of October, 2009.

MARK D. CLARKE
United States Magistrate Judge