FILED'10 MAR 24 13:15USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

PETER T. HARRELL,

                                                            Case Number CV 08-3037-CL

               Plaintiff,

     v.

                                                            **REPORT & RECOMMENDATION**

SOUTHERN OREGON UNIVERSITY, et al.,

               Defendants.

Clarke, Magistrate Judge:

     Plaintiff Peter Harrell filed a complaint in March 2008 against Defendants Southern Oregon University ("SOU"), Mary Cullinan, Casey Clithero, Janay Hass, Lore Rutz-Burri, and John Does 1-20, et al., alleging a violation of his First Amendment rights, his Due Process rights, and various state law claims including fraud, conversion, negligence, and unlawful trade practices. (Compl. 1.)

     In the two years since the complaint was filed, several claims and defendants have been dismissed. Only § 1983 claims for violations of his civil rights remain against the individual defendants Ms. Cullinan, Mr. Clithero, Ms. Haas, and Ms. Rutz-Burri. Defendants move for summary judgment on these remaining claims. For the reasons set forth below, the court recommends granting Defendants' motion. (Dkt. No. 89.)

REPORT & RECOMMENDATION   1

## I.    Background

Plaintiff enrolled at SOU in the fall of 2007 with a declared major of Criminology and Criminal Justice ("CCJ").  (Compl. 3.)   Plaintiff was enrolled in the course "Criminology and Criminal Justice, Theories of Criminal Behavior" in the Fall 2007 term taught by Jodi Merritt. (Concise Statement of Material Facts ("CSMF") ¶ 1.)  Students communicated entirely via the online blackboard.  (Mem. in Supp. of Mot. for Summ. J. ("Defs.'s Mem. for SJ") 2.)  The course generally required students to comment on their classmates' posts.  In their comments to the blackboard, students were instructed, first, to explain how they agreed or disagreed with a post; second, tell the classmate one thing that he/she did well regarding the scholarship of the writing (including organization, clarity, grammar, etc.), the strength of the argument or the quality of the evidence; and third tell the classmate one thing that could be improved.  (Aff. of Marc Abrams, Ex. B, 80.)

Ms. Merritt did not approve of the way Plaintiff expressed himself in his comments to his classmates.  Defendants state, "Harrell's commentaries . . . reflected disrespect for the rights and feelings of the other students, and contempt for their ideas, their research, and their writing styles."  (CSMF ¶ 2.)  Plaintiff disputes Defendants' characterization.  (Response to Concise Statement of Material Facts ("RCSMF") ¶ 2.)

For example, Plaintiff commented on one student's post, Student A.[1]  He began, "you did not follow the directions and attach your essay as a file.  Additionally, paragraphs are your friends. ;)."  Student B commented that Student A had some good ideas, but then Plaintiff responded to her, "do you think so []?  Which ones do you think were "good" and why?" (Aff. of

---

[1] In respect of student privacy, anonymous names are used.

Marc Abrams, Ex. B, 86-88.)

Plaintiff also made several other comments that upset his classmates.  He criticized the class on the discussion board:  "I don't know about you, but when I hire somebody to do a job, especially when they charge a lot more than others, I damn well expect the job to be done right, and done well, with a minimal amount of hassle.  Then they blow it, I sure as hell am not going to roll over with a cry of 'thank you, Sir!  May I have another?'"  (Aff. of Marc Abrams, Ex. B. 18.)  He also continued in a later post, "But hey!  Lots of people get through life not making waves, just getting by, and generally accepting the mediocrity of everything, especially when all they are focused on is a personal issue . . . probably why the world and this nation is such a rathole, eh?"  (Aff. of Marc Abrams, Ex. B, 21.).

The instructor found Plaintiff's commentary inappropriate, noting in her own posting to the blackboard:

> This response is absolutely inappropriate. Let me remind you that the purpose of responding to your peers is to <u>appropriately</u> express what you agree and/or disagree with in their posting.  Everyone is entitled to their opinions and in an attempt to further educate ourselves it is important that we present our stance in a way that encourages others to see our viewpoints.  It isn't appropriate, however, to be forceful and/or abrasive . . . this is my job.  I do encourage you to continue to express your opinions, however, you should be aware of your presentation.  As educated adults there is an appropriate way of expressing ourselves without being abrasive or confrontational.

(Aff. of Marc Abrams, Ex. B, 93.)

Plaintiff asserts that he was subjected to "public vilification, harassment, embarrassment, and ultimately formal censure by the defendants."  (Compl. 4.)  Defendants argue that there were no violations of Plaintiff's rights and that, on the contrary, "Plaintiff was rude and disrespectful to fellow students in two different classes, taught by two different teachers. . . .  When disciplinary

proceedings resulted, he accused those of conducting those proceedings of being Nazis and refused to participate." (Defs.'s Mem. for SJ 2.)

One classmate contacted the professor via email: "I know there is one vocal student who quite frankly makes me want to cringe when I read his postings. I have chosen not to engage him at all because he is completely intolerant of any type of criticism." (CSMF ¶3; Aff. of Marc Abrams, Ex. C, 1.) When Ms. Merritt addressed her concerns to Plaintiff about his comments, he responded, "Your condescending, intolerant, and authoritarian tone to a student in a public forum is insulting, improper, and not even backed by a rational and logical assessment of the events you commented upon." (Aff. of Marc Abrams, Ex. D, 1.) Though he complimented her website and course design, he continued, "the narrow-mindness, thoughtlessness, irresponsibility, and intolerance demonstrated by your post as an instructor, coupled with your disregard for the college's rules and process concerning alleged student infractions, deeply concerns me." (Aff. of Marc Abrams, Ex. D, 2.)

The instructor brought the matter to the attention of the chair of the CCJ department, Ms. Lori Rutz-Burri, who then referred the matter to Mr. Casey Clithero, SOU's coordinator of student conduct. (CSMF ¶¶ 4, 5; Aff. of Marc Abrams, Ex. E, 1; Defs.' Mem. for SJ 3.) Mr. Clithero notified Plaintiff via U.S. mail to the address on file with the University about charges of violation of the Proscribed Conduct Policy[2] on November 2, 2007. (Aff. of Casey Clithero ¶

---

[2] In 2009, the Student Conduct Code was revised and moved to Or. Admin. R. Ch. 573, Division 76. However, the court refers to the Student Conduct Code in use during the 2007-2008 academic year. In that code, the Proscribed Conduct Policy prohibited classroom disruption, defined as,

"Disruption, obstruction or interference with educational activities in classrooms, lecture halls, campus library, laboratories, computer laboratories, theatres, or any other place where education and teaching activities take place including, but not limited to, talking at inappropriate times, drawing unwarranted attention to self, engaging in loud or distracting behaviors, displaying defiance or disrespect of others, or threatening any University student or employee.

REPORT & RECOMMENDATION 4

7.) The letter explained, "Specifically, the report alleges you were disrespectful to fellow classmates and your instructor in an online forum on several occasions this term." (CSMF ¶ 6; Aff. of Marc Abrams, Ex. F, 1.) He gave Plaintiff the option of a disciplinary conference or a faculty/student conduct board hearing. (Aff. of Marc Abrams, Ex. F, 1.) Plaintiff responded, declining both options, and declared,

> There is no regulation that requires I participate in any kangaroo court or other administrative procedure at the school before brining legal action against you on these bases, and I don't think that I will bother, thank you.  In fact, the more of this school I see, and the more screw-up, lack of common sense, errors, and other mishandlings I witness, the more eager I become to send a wake-up call to its administration.

(CSMF ¶ 7; Aff. of Marc Abrams, Ex. G, 1-2.)

Plaintiff states that the notice in the form of a Mr. Clithero's letter was untimely and improper. (RCSMF ¶ 6.)  However, as Defendants pointed out, Plaintiff responded to the letter on November 5, 2007, before the November 13, 2007 hearing.  (Reply to CSMF ¶ 6.)

At the November 13, 2007, the Student Conduct Hearing was held without Plaintiff.   He was found responsible for classroom disruption.  The Decision Rationale stated,

> Peter elected not to attend his hearing, and gave advance notice of that intention. Based on the posts directed at other students in the files, as well as the criticism of the professor in a public forum, I found that his behavior constituted a disruption to the online classroom.

(Aff. of Marc Abrams, Ex. I, 1.)

As Mr. Clithero explained to Plaintiff in a letter on November 15, 2007,

> your actions diminished the comfort level of others to engage in classroom discourse, and showed further disrespect to the course professor. . . . your abrasiveness with other students and hostility toward certain University

---

Or. Admin. R. 575-075-0040.

employees is a cause for concern.  I caution you in the future to be mindful of your
tone when interacting with members of the campus community, particularly in
your distance education courses.

(Aff. of Marc Abrams, Ex. I, 3.)

Plaintiff responded to Mr. Clithero by letter declaring it "a level of incompetence"
because Mr. Clithero's letter was first sent to the wrong address.  Plaintiff continued, "I would
suggest that if you object to the 'tone', 'abrasiveness', and/or 'hostility' with which you are dealt
with, then perhaps you . . . shouldn't act like a pack of damn Nazis and try to tell people what
they can and cannot say in what is supposed to be a free country."  (CSMF ¶ 10; Aff. of Marc
Abrams, Ex. J, 3.)  SOU took no further action regarding Plaintiff's conduct.  (CSMF ¶ 11.)

The following term, Plaintiff enrolled in "Law of Criminal Procedure" taught by Ms.
Janay Haas.  (CSMF ¶ 12.)  This was also an online class that used an online discussion forum.
Plaintiff's posts to the discussion board again caused some students to refrain from posting.  One
student emailed the professor, "I am sickened by the antics in mr. harrell's [sic] attempts at
stirring everyone up.  I notice that he engages several of the others and quite honestly, I don't
have a desire to play games . . . I don't need the garbage of games playing."  (Aff. of Marc
Abrams, Ex. N, 1.)

Mr. Clithero again gave notice to Plaintiff via letter, mailed to the address the University
had on file, on February 25, 2008,  and informed him of charges of classroom defiance and
disrespect.  (Aff. of Casey Clithero ¶ 7.)  Plaintiff was directed to respond by February 29, 2009.
(CSMF ¶ 15; Aff. of Marc Abrams, Ex. O, 1.)   Plaintiff asserts he did not receive the letter until
March 6, 2008, and at that time responded via email.  (CSMF ¶ 15; Aff. of Marc Abrams, Ex. P,
1.)  He disagreed with the Proscribed Conduct Policy and its application to him; he gave notice

REPORT & RECOMMENDATION   6

of updated claims under the Oregon Tort Claims Act.  (Aff. of Marc Abrams, Ex. P, 1.)

Mr. Clithero contacted Plaintiff on March 7, 2008, and explained that a hearing had been

held on February 29, 2008, in his absence, regarding the alleged violations of the Proscribed

Conduct Policy.  (CSMF ¶ 17)  At this hearing, Plaintiff was found responsible for the violations.

He was sanctioned with university probation:  "Please be advised that any further violations will

result in more severe sanctions and restrictions to your student account, including the possibility

of your disengagement from the University."  (Aff. of Marc Abrams, Ex. Q, 1.)

Plaintiff lost no privileges as a result of the hearing. The probation was not placed on his

academic transcript; rather, "probation" status only allow SOU to invoke suspension if other

violations occur.  Plaintiff's access to the course online discussion board was unchanged.  (CSMF

¶ 19.)  However, Plaintiff voluntarily dropped this course.

Plaintiff asserts that his classmates were not required to read his comments.  (RCSMF ¶

2).  However, Defendants counter that reading and responding was an integral component of

class participation.  (Reply to CSMF ¶ 2.)

On March 31, 2008, Plaintiff filed this complaint for civil rights violations and pendent

state law claims against all defendants.

## II.    Relevant Procedural History

Defendant Southern Oregon University filed a motion to dismiss the § 1983 claims

against it on September 2, 2008.  U.S. Magistrate Judge Mark Clarke recommended that the

claims against Defendant SOU be dismissed.  He also recommended §§ 1985, 1986, and 1988

claims and pendent state law claims against all defendants be dismissed.  (Dkt. No. 35.)  U.S.

District Court Judge Owen Panner adopted this recommendation on February 2, 2009.  (Dkt. No.

41.)  At that time, Plaintiff's only remaining claims were violations of his First Amendment and

Due Process rights by the individual defendants, in both their personal and official capacities.

After a status conference on July 28, 2009, Plaintiff asked the court to rule on his motion

for preliminary injunction, first sought in his original pleading:

> Plaintiff requests that this Court temporarily and permanently enjoin the
> defendants from enforcing OAR 573-075-0040 "Proscribed Conduct", while
> declaring said rule to be repugnant to the Constitution both generally due to
> vagueness and overbreadth, and as applied to Plaintiff . . . and thus void, and
> further order that the "Official University Warning," and "University Probation"
> designations made by Defendant Clithero, and all references thereto, be removed
> from Plaintiff's school records.

(Compl. 10.)

On October 16, 2009, Judge Clarke recommended denying the motion.  (Dkt. No. 74.)

He found that Plaintiff had not shown the Proscribed Conduct policy was unconstitutional on its

face or that it was unconstitutional as applied to Plaintiff.  On October 30, 2009, Judge Panner

adopted Judge Clarke's recommendation and denied Plaintiff's motion.  (Dkt. No. 77.)

On November 4, 2009, Plaintiff appealed the court's order to the Ninth Circuit Court of

Appeals.  (Dkt. No. 78.)  Plaintiff also moved the court to stay the case, pending this apeal.  (Dkt.

No. 94)  The court denied Plaintiff's motion to stay on January 5, 2010.  (Dkt. No. 102.)  Plaintiff

then filed a motion to reconsider the order denying the stay on January 6, 2010.  (Dkt. No. 106.)

The court denied this motion on January 14, 2010.  (Dkt. No. 109.)

On January 19, 2010, Plaintiff filed objections to several of the court's orders.  These

included orders denying his motion for a stay pending the appeal (Dkt. No. 102),  his motion for

reconsideration of denying his motion for pro bono counsel (Dkts. No. 47, 97, & 104), and

motion to reopen discovery (Dkt. No. 103).  (Dkt. No. 112.)   Judge Panner overruled these

objections on March 17, 2010.  (Dkt. No. 120.)

Defendant's motion for summary judgment was fully briefed and under advisement as of January 24, 2010.

## III.    Standard of Review

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Material facts are those which may affect the outcome of the suit under the governing law. "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290

F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case.  Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).  Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## IV.     Defendants' Motion for Summary Judgment Should Be Granted

Plaintiff alleges that he was deprived of his rights under the First and Fourteenth Amendments of the U.S. Constitution and seeks relief under 42 U.S.C. § 1983.  Section 1983 creates a cause of action for individuals deprived of their constitutional rights.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Claims under 42 U.S.C. § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." Lugar v. Edmondson Oil Co., 457

REPORT & RECOMMENDATION   10

U.S. 922, 924,(1982).

The First Amendment protects an individual's right to free speech.  U.S. Const. amend. I.
The Fourteenth Amendment forbids the State from depriving any person of life, liberty, or
property without due process of law.  U.S. Const. amend. XIV, § 1.  A party alleging violation of
his Due Process rights must show that he has a property or liberty interest and that this interest
was deprived of him without due process of law.

### A.  Court's Order Denying Injunction Established That Plaintiff's First Amendment Rights Were Not Violated

The court revisits its October 2009 order in which it denied Plaintiff's motion to enjoin
defendants, as the same law applies to support granting Defendants' motion.  To warrant
enjoining the Defendant, the Plaintiff had to demonstrate (1) that he had suffered an irreparable
injury; (2) that the remedies available at law were inadequate to compensate for his injury; (3)
that a remedy in equity was warranted after balancing the hardships between parties; and (4) that
the public interest would not be disserved by a permanent injunction."  N. Cheyenne Tribe v.
Norton, 503 F.3d 836, 843 (9th Cir. 2007).

In his motion for an injunction, Plaintiff argued that the Proscribed Conduct policy
injured him by violating his First Amendment rights.  He argued that the policy was overbroad
and vague on its face and thus unconstitutional.  He also argued that the policy, as applied to him,
was unconstitutional.

The court disagreed.  First, it found that Plaintiff's facial attack on the policy failed.  The
policy was not overbroad and did not unconstitutionally infringe upon free speech.  (Report and
Recommendation October 16, 2009 ("Injunction R&R") 12; Order October 30, 2009 ("Injunction

REPORT & RECOMMENDATION   11

Order").)  The court also found that the policy was not vague and students would be able to anticipate what behavior it prohibited.

Second, the court found the policy was not unconstitutional as applied to Plaintiff. Courts have traditionally given schools wide latitude to regulate and safeguard the academic atmosphere.  (Injunction R&R 13-14.)  The policy at question here was within the school's power.  Defendants gave adequate warning to Plaintiff that his conduct was inconsistent with the policy.

The court found that the Proscribed Conduct Policy was not unconstitutional.  Judge Panner noted,

> Defendants have not prohibited Harrell from posting his ideas on the internet, expressing his views in a public forum, or even shouting his views from the rooftop.  At issue is Harrell's behavior toward fellow students within a classroom setting, albeit an online classroom. . . . Harrell was not admonished for expressing an unpopular view.  Rather, what troubles [SOU] officials are the *ad hominem* attacks Harrell sometimes makes upon his classmates.  Harrell remains free to express his thoughts.  He has simply been asked to do so in a mature manner.

(Injunction Order 2.)

Plaintiff's interpretation of governing law is incorrect; instead, he clings tightly to his belief that the First Amendment is carte blanche to say whatever he wants.  "This is pure speech in its most classic form, and as a criticism of a government agency and its functionaries, is afforded the highest level of protection under the First Amendment as politically-motivated speech." (Pl.'s Resp. 2.)

Plaintiff's statement of facts are also off point and do not present a genuine issue of material fact as to whether the policy was overbroad, vague, or unconstitutionally applied to Plaintiff. For example, he asserts that his comments were not obscene or threatening and that

REPORT & RECOMMENDATION   12

students had to choose to read his comments.  (RCSMF ¶¶ 3, 12.)

The court previously concluded that Plaintiff suffered no injury and noting presented since the Injunction R&R and Order has changed that decision.  Plaintiff was not deprived of his rights.  With no injury, he has no claim under 28 U.S.C. § 1983.  Defendants' motion for summary judgment on Plaintiff's claim for damages for violation of his First Amendment rights should be granted.

**B.      Defendants Have Shown There Is No Issue of Fact as to Due Process Violations**

Plaintiff also argues that Defendants violated his rights under the Fourteenth Amendment. He asserts that by allegedly censuring his speech, "Defendant Clithero violated numerous [Oregon Revised Statutes and Oregon Administrative Rules] relating to proper notice and due process at administrative hearings.  This deprivation resulted in substantial prejudice to plaintiff, and substantially affected State and Federally protected rights of Plaintiff Harrell, and as specifically provided by the Fourteenth Amendment."  (Compl. 8.)  Plaintiff argues that various Oregon statutes and rules create a constitutionally protected liberty interest.

Defendants argue there is no genuine issue of material fact (1) that Plaintiff had a liberty or property interest in posting to the online blackboard and (2) that the procedures protecting his alleged right were not sufficient.

**1.      No Property or Liberty Interest**

Plaintiff argues that he has a property and liberty interest in his ability to post his commentary on the online discussion board.  Though online learning is a rather new educational tool, the Supreme Court's decision in <u>Goss v. Lopez</u>, 419 U.S. 565 (1975), is instructive in the

REPORT & RECOMMENDATION  13

court's analysis.

In <u>Goss</u>, the Supreme Court held that students facing ten-day suspensions from public school in Ohio were entitled due process.  <u>Id.</u> at 576.  Due process required the school to provide notice of the charges against the students, an explanation of the evidence the authorities have, and an opportunity to present his or her side of the story.  <u>Id.</u> at 581.  The Court held that the Due Process Clause applied because suspensions from school deprived students of two rights: a property interest in educational benefits and a liberty interest in their reputations.  <u>Id.</u>  at 573-74.

Property interests are not created by the Constitution but are created and defined by independent sources such as state statutes or rules that entitle citizens to certain benefits.  <u>Id.</u> at 572-73 (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).  The Court found that students had a property interest in their education because of the State of Ohio's education laws.  Ohio law created free education to all residents between five and twenty-one years of age.  There was also a compulsory-attendance law.  As a result, students were entitlted to public education.  <u>Goss</u>, 419 U.S. at 573.  "Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct, absent, fundamentally fair procedures to determine whether the misconduct has occurred." <u>Id.</u> at 574 (citing <u>Arnett v. Kennedy</u>, 416 U.S. 134, 164 (1974)) (Powell, J., concurring).  The Court viewed a ten-day suspension from school as a deprivation of a property right to education because it was a "total exclusion from the educational process." <u>Id.</u> at 576.

The Due Process clause also forbids arbitrary deprivations of liberty.  <u>Id.</u> 574.  The Court explained, "Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential."

Wisconsin v. Constantineau, 400 U.S. 433, 437 (1970).  In Constantineau, the Court found that a

Wisconsin statute was unconstitutional because it allowed state officials to post information

about an individual's excessive drinking habits that would expose the individual to public

embarrassment and ridicule without due process of the law.

Applying Goss and Constantineau, to Plaintiff's circumstance, the court concludes there is

no property or liberty interest at stake.  First, Plaintiff cannot argue an entitlement to post-

secondary education.  Plaintiff cites no Oregon statutes to support his contention of a property or

liberty interest, and, further, the Supreme Court has explicitly stated that "education . . . is not

among the rights afforded explicit protection under our Federal Constitution."  San Antonio

Independent School District v. Rodriguez, 411 U.S. 1, 35 (1972).

Second, as to Plaintiff's alleged liberty interest to reputation, there is no evidence that he

was subjected to the embarrassment and ridicule as seen in Constantineau.  His professor's

corrective commentary was no different than any student receives in class when he is being

disruptive.  Further, the comment was not in a public place but within the classroom blackboard.

Third, and lastly, Plaintiff argues that Or. Rev. Stat. §§ 183.415 and 183.413[3] create a

"constitutionally-protected liberty interest." (Compl. 8.)  A closer parsing of the statute, however,

reveals that Plaintiff is incorrect.  These statutes regulate the process for contested case hearings

in Oregon, but Plaintiff  is not entitled to a contested case under Oregon Administrative Rules.

---

[3] Or. Rev. Stat. § 183.415(1) &(2) provides:
(1) The Legislative Assembly finds that persons affected by actions taken by state agencies have a right to be
informed of their rights and remedies with respect to the actions.
(2) In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice, served
personally or by registered or certified mail.
Or. Rev. Stat. § 183.413(1) provides:  The Legislative Assembly finds that parties to a contested case hearing have a
right to be informed as to the procedures by which contested cases are heard by state agencies, their rights in
hearings before state agencies, the import and effect of hearings before state agencies and their rights and remedies
with respect to actions taken by state agencies.

REPORT & RECOMMENDATION  15

Rule 573-030-0015 explains that a person is not entitled to a contested hearing when an optional

hearing method has been selected as the method for resolving the conflict.  Because there are

optional hearing methods for student misconduct,[4] Plaintiff cannot rely on the statutes for

contested case hearings to establish an interest.

Even if Plaintiff did have a property interest, he cannot show that he suffered a

deprivation.  Plaintiff's instructors cautioned him about his tone and choice of commentary on the

online discussion boards.  He was not banished from the site nor was he suspended from school.

This in no way equals a "total exclusion from the educational process."

## 2.    Process Was Sufficient

Assuming that Plaintiff did have a protected property or liberty interest, and there was a

deprivation, Defendants argue that there is no genuine issue of material fact as to sufficient

process.

The Supreme Court explained sufficient process in Goss.  The Court explained that

before a suspension, due process requires students to be given oral or written notice of the

charges against them.  If the student denies the charges, the school must provide an explanation

of the evidence and authorities and provide the student with the opportunity to present his side.

"The Clause requires at least these rudimentary precautions against unfair or mistaken findings of

misconduct and arbitrary exclusion from school."  Goss, 419 U.S. at 581.

---

[4] Or. Admin. R. 573-076-0100:
(1) Regarding the practical matter of reviewing incidents of student misconduct, this code outlines the procedures to be followed by the University. Any allegations of misconduct must involve violations of listed rules and the University must follow written procedures. These procedures include:
    (a) Written notice of what rule(s) have allegedly been violated, in sufficient detail to allow a response.
    (b) An opportunity to address the issue(s) before a designated University staff member or hearing board.
    (c) A timely, written decision based on the greater weight of the information presented.
    (d) An opportunity to appeal based on alleged deviation from the written procedures.
(2) The Code of Conduct should be read broadly. It does not define all prohibited conduct in exhaustive terms.

There is no requisite time that must elapse between the "notice" to the student of his charges and the hearing to comport with due process. "We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." Id. at 582; see Tate v. Board of Education, 453 F.2d 975, 979 (8th Cir. 1972); Vail v. Board of Education, 354 F.Supp. 592, 603 (D. N.H. 1973).   An individual cannot attack due process if he chooses not to attend the hearing. See Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995) ("[E]mployee cannot claim lack of due process when his employer offered him [] a pretermination hearing and he refused to attend.").

Defendant asserts that Plaintiff received sufficient notice.  Plaintiff was charged with academic disrespect on two separate occasions, and in both instances, Mr. Clithero notified him of his conduct via letter and gave him the opportunity to deny the charges and present his side. He was given sufficient time to respond.  He was sent a letter on November 2, 2007, requiring a response before the November 13, 2007.  He was sent another letter for a second charge of academic disrespect on February 25, 2007, requiring a response by February 29, 2008.  Both letters notified him of the charges, alerted him to the time in which to respond, and informed him of his option to resolve the issue by either an informal meeting or a hearing.

Plaintiff challenges both letters and points out that the February letter was sent to the incorrect address.  The letters, however, still comply with the due process requirements laid out in Goss.  Further, Mr. Clithero sent the letter to Plaintiff at the address Plaintiff provided to the University when he enrolled.  (Aff. of Casey Clithero ¶ 7.)  Plaintiff also declined to attend both hearings and is ill-positioned to attack the hearing.  See Flynn, 58 F.2d at 288.  He has presented no evidence to suggest a genuine issue of material fact.

REPORT & RECOMMENDATION   17

Plaintiff has not shown his due process rights were violated.  He has no liberty or property interest in his comments to the online discussion board, and even if he had such an interest, he has made no showing of deprivation or that the process was improper.  Thus, Plaintiff has suffered no injury and has no claim for relief under § 1983.  Defendants' motion for summary judgment on his due process claims should be granted.

## VI.    Conclusion

Defendants' motion for summary judgment should be granted.  Even viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of material fact. Defendants did not violate Plaintiff's First Amendment or Due Process rights.

## VII.    Recommendation

The Court recommends granting Defendants' motion for summary judgment. *This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge.   *Objections to this Report and Recommendation, if any, are due by April 12, 2010.  If objections are filed, any response to the objections are due within 17 days of service of the objections, see* Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will

REPORT & RECOMMENDATION   18

constitute a waiver of a party's right to appellate review of the findings of fact in an order or

judgment entered pursuant to the Magistrate Judge's recommendation.


DATED   this _24_ day of March, 2010.


Mark D. Clarke
United States Magistrate Judge